# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Gerald R. Rouillard, III, d/b/a ) ASBCA No. 58458
  International Gear Technologies )
)
Under Contract No. SPM7MC-11-M-1722 )

APPEARANCE FOR THE APPELLANT:     Steven J. Boretos, Esq.
         Everett, WA

APPEARANCES FOR THE GOVERNMENT:   Daniel K. Poling, Esq.
         DLA Chief Trial Attorney
        Matthew O. Geary, Esq.
        Colleen T. Loughran, Esq.
        Trial Attorneys
        DLA Land and Maritime
        Columbus, OH

## OPINION BY ADMINISTRATIVE JUDGE PAUL ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This is a timely appeal of a contracting officer's (CO's) final decision terminating appellant Gerald R. Rouillard, III, d/b/a International Gear Technologies' (IGT's) supply contract for default. The Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, is applicable. The government has filed a motion for summary judgment. IGT opposes the government's motion; it has not filed a cross-motion. We grant the motion.[1]

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 19 July 2010, the Defense Supply Center, Columbus, Ohio (Maritime Supply Chain) (DSSC) issued request for quotations (RFQ) No. SPM7MC-10-Q-1741 for the purchase of 311 spur gears, National Stock Number (NSN) 3020-00-888-0130 (R4, tab 99 at 5-6). The RFQ included a procurement history for this NSN, dating back to 10 July 2007. As awarded, unit costs for the earlier contracts ranged from $106.00 to

---

[1] The government filed separate motions for summary judgment in ASBCA Nos. 58458 and 58459; however, appellant's opposition brief and the government's reply brief dealt jointly with the two appeals. Because the facts of each appeal differ, the Board is issuing separate decisions.

$210.95. (*Id.* at 2) The RFQ also contained a first article test (FAT) requirement which consisted of one additional unit (*id.* at 7).

2. The government's estimated unit price was $127.86. It received quotations with unit prices ranging from $98.47 to $348.00. IGT quoted a unit price of $112.25. (R4, tab 100)[2]

3. On 30 December 2010, DSSC awarded Contract No. SPM7MC-11-M-1722 to appellant for the supply of 311 spur gears at a unit price of $112.25. Within 45 days IGT was also required to submit a First Article (FA) at a unit price of $1,500. The total fixed-price contractual amount was $36,409.75. (R4, tab 1 at 1, 4-6) As awarded, the FA was to be delivered on 13 February 2011, and the remaining spur gears were to be delivered 255 days after date of the order or by 11 September 2011 (*id.* at 1, 6).

4. The contract contained FAR 52.209-4, FIRST ARTICLE APPROVAL— GOVERNMENT TESTING (SEP 1989). Also included in the contract by reference were FAR 52.233-1, DISPUTES (JUL 2002); and FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE (APR 1984). (R4, tab 1 at 9-10)

5. IGT did not deliver the FAT unit by 13 February 2011 (R4, tab 6 at 2). On 22 June 2011, IGT informed the government that "we had a failure on our gear tester" (*id.* at 1). As of 20 October 2011, IGT still had not delivered the FA. On that date, it informed the government that "[q]uality found an issue with the root diameter of the gear teeth on the first article part, we need to either request a waiver, or finish another first article from a second lot we had started months ago." (R4, tab 26 at 4)

6. On 3 January 2012, the CO issued bilateral Modification No. P00001 to the contract. It established a new FA delivery date of 17 February 2012 and extended the delivery date for 311 spur gears from 11 September 2011 to 26 July 2012. (R4, tab 37 at 1-2) The modification also provided that failure of the FAT would result in termination of the contract for default (*id.* at 2). Finally, the parties agreed that IGT would pay $1,500 for the modification (*id.*).

7. IGT did not deliver the FA by 17 February 2012 (R4, tab 44 at 2). On 1 March 2012 appellant advised the CO that the FAT unit had been completed (*id.*). On 1 April 2012, IGT stated in an email to the CO: "When I get to my office tomorrow I will send you the FAT tracking info" (R4, tab 45). On 3 April 2012, appellant forwarded the promised information to the CO (R4, tab 46 at 1-2). On 11 April 2012, the CO wrote to appellant, in part, as follows: "I just checked tracking for this item. UPS shows this as not being shipped? I need to know what is going on." (R4, tab 48 at 1) On 12 April

---

[2] In the "ABSTRACT OF QUOTES," appellant's bid was coded as "CAGE" "5HFP7" (R4, tab 100).

2

2012, IGT responded to the CO, stating: "I will be back in the office tomorrow to resolve FAT shipment, yes, we do have a large lot of parts waiting to ship once FAT is approved" (R4, tab 50). As of 19 April 2012, the FAT unit had still not been completed (R4, tab 53 at 1); and as of 3 May 2012, it had not been shipped (R4, tab 56 at 3).

8. On 1 June 2012, the CO issued Modification No. P00002 to amend a drawing number (R4, tab 68). On 8 June 2012, the FAT unit was shipped for testing by the government (R4, tab 77); and, on 14 June 2012, it was conditionally approved (R4, tab 78 at 1). On 20 June 2012, the CO forwarded a FAT conditional approval letter to IGT, listing six discrepancies. He also requested that appellant forward a revised date for the production lot by 25 June 2012. (R4, tab 81 at 1, 3)

9. IGT did not comply with this request; and, on 26 June 2012, the CO again requested the delivery schedule by close of business on that day (R4, tab 83 at 1). On that same date, appellant responded that it would forward "a complete schedule" by 29 June 2012. He also stated: "I can tell you that we have separated 50 from a 160 piece lot and are expediting the 50 pieces for shipment asap." (R4, tab 84) On 28 June 2012, IGT advised the CO that it would ship 50 units "around July 20th" (R4, tab 88 at 1). On 9 July 2012, the CO, once again, requested a complete delivery schedule (R4, tab 89 at 1).

10. On 11 July 2012, Mr. Gerry Rouillard, III, IGT's president, forwarded a lengthy letter to the CO in which it alleged that, as result of various increased costs, its actual unit cost was $276.79, as opposed to the contractual price of $112.25 (SOF ¶ 2). It also contended that, as part of its bid, it had relied on Mr. Rouillard's father for "a large number of volunteer hours." Unfortunately, as result of a heart condition, the elder Mr. Rouillard had been unable to work on the contract. Finally, IGT alleged that there had been a mutual mistake when it formulated its bid. Alleging that it had paid $1,680 for inspection of a single unit, appellant described the $1,500 payment to the government contained in Modification No. P00001 as an inspection fee, and concluded that it had grossly underestimated the actual fee of producing the spur gears. (SOF ¶ 6; R4, tab 90 at 1-3)

11. On 16 July 2012, the CO forwarded the following response to Mr. Rouillard:

> In response to your 7/11/12 request for a price increase on contract SPM7MC11M1722 for NSN number 3020-00-888-0130, your request is hereby denied.
>
> This is a firm fixed price contract. Your proposal in response to RFQ SPM7M10Q0302 offered a set unit price. The subject contract was awarded accordingly. You are obligated to perform to the terms of the contract.

3

Within 5 calendar days from the date of this notice, you are requested to advise the undersigned in writing whether you will continue to perform the subject contract in accordance with the existing terms and conditions. Failure to respond by [sic] will lead to termination for default proceedings.

The Government is not invoking its rights under FAR 52.249-8 - - Default (Fixed-Price Supply and Service), at this time. Please be advised, however, that notice of intention not to perform, or failure to perform, under the provisions of the contract may result in the subject contract being terminated for default, subject to the notice provisions of the default clause.

Any assistance rendered to the contractor on this contract, or acceptance by the Government of delinquent goods or services hereunder, will be solely for the purpose of mitigating damages, and is not to be construed as an intention on the part of the Government to condone any delinquencies or as a waiver of any rights the Government may have under the above contract.

(R4, tab 91) On 20 July 2012, IGT replied to the CO's letter. It stated that it would "continue to perform the subject contract in accordance with the existing terms and conditions." But appellant again sought a price increase based upon "clear and convincing evidence that a mutual mistake was made." (R4, tab 92 at 1-2)

12. IGT did not deliver the production lot of spur gears by the modified delivery date of 26 July 2012 (SOF ¶ 6; R4, tab 96). Accordingly, on 7 August 2012, the CO forwarded by email a show cause letter to appellant in which he stated:

You are hereby notified that the Government considers your Email dated 17 July, 2012 requesting an increase in unit price as unacceptable.

Since you have failed to perform within the time required by the terms of your contract, the Government is considering terminating the contract under the provisions for default. Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arose from causes beyond your control and without fault or negligence on your part. Accordingly, you are given the

4

opportunity to present, in writing, any facts bearing on the question to the undersigned, within 10 days (August 17, 2012) after receipt of this notice. Your failure to present any explanations within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the Contractor and the Government and the liabilities that may be invoked if a decision is made to terminate for default.

If it is your intention to perform under this contract, you should within 10 days (August 17, 2012) of your receipt of this letter, propose a new and reasonable delivery date by which the required supplies will be delivered together with monetary consideration for the additional performance time needed. Your proposed new delivery schedule will be taken into consideration by the Contracting Officer in deciding whether to terminate the contract.

The Government does not waive any rights it has by virtue of this letter and specifically reserves any and all rights it has relative to untimely delivery. Should your firm fail to propose a new delivery date, that failure will be considered as repudiation by your firm of its obligation to perform under this contract and the contract may be terminated for default.

Any assistance given to you on this contract or any acceptance by the Government of delinquent goods or services will be solely for the purpose of mitigating damages, and it is not the intention of the Government to condone any delinquency or to waive any rights the Government has under the contract.

(R4, tab 93)

13. IGT responded to the CO's show cause letter on 11 August 2012. It proposed a two-stage delivery schedule with units being delivered on 30 November 2012 and 18 January 2013. It also, once again, referred to the illness of the elder Mr. Rouillard and contended that there had been a mutual mistake (R4, tab 94). On 12 September 2012, the CO forwarded a letter to IGT in which he terminated the contract for default (R4, tab 96). This timely appeal followed (R4, tab 98).

5

## DECISION

A grant of summary judgment is appropriate when a review of the record demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), (c)(1); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The moving party has the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes the requisite showing, then the burden shifts to the nonmoving party to show that there is a genuine factual issue for trial. *Id.* Moreover, the party opposing summary judgment–here the appellant–"must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient." *Mingus,* 812 F.2d at 1390-91.

We are also guided by the settled law governing terminations for default. Such a termination is "a drastic sanction which should be imposed...only for good grounds and on solid evidence." *J.D. Hedin Construction Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969) (citation omitted). Accordingly, the government bears the burden of proving that the termination was reasonable and justified. If the government establishes a *prima facie* case in this regard, the burden of production–or going forward–shifts to the contractor. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987); *New Era Contract Sales, Inc.*, ASBCA No. 56661 *et al.*, 11-1 BCA ¶ 34,738 at 171,022.

Initially, we simply note that appellant did not file a "Statement of Genuine Issues of Material Fact" which would have aided us in succinctly identifying any genuine factual disputes. Instead, it opposed respondent's motion in a diffuse manner with few or no citations to the evidentiary record. What is undisputed is that appellant failed to deliver any production lots on or before the revised delivery date of 26 July 2012 (SOF ¶ 12). Therefore, the government has established a *prima facie* case, and the burden of going forward shifts to appellant to demonstrate that its failure to deliver was excusable.

Appellant relies heavily on the argument that the purported illness of its president's father, Mr. Gerald Rouillard, Jr., severely impacted its ability to perform. Although appellant provides little or no evidence to support its underlying contentions, we will accept for purposes of this motion that Mr. Rouillard suffered a serious illness at the time of contractual performance. As a legal matter, this Board has promulgated a host of cases which hold that, absent an understanding by both parties that a key person would be responsible for performance, his or her illness or death would not excuse a default. *See, e.g., M.W. Microwave Corp.*, ASBCA No. 45084, 93-3 BCA ¶ 26,027 at 129,377-78; *Jonatech, Inc.*, ASBCA No. 46088, 94-3 BCA ¶ 27,248 at 135,774; *Brill Brothers, Inc.*, ASBCA No. 42573, 94-1 BCA ¶ 26,352 at 131,056; *M&T Construction Co.*, ASBCA No. 42750, 93-1 BCA ¶ 25,223 at 125,636. No such

6

understanding has been shown here. Thus, appellant's arguments in this regard are unavailing.

Appellant also contends that it should be granted relief from the default termination because of an alleged mistake in bid. During contractual performance, IGT contended, without any support in the evidentiary record, that its inspection cost for a single unit was $1,680. It also argued that the $1,500 fee stated in a Modification No. P00001 was the government's inspection cost, and reasoned from this premise that its bid of $112.25 grossly underestimated the cost of producing the spur gears (SOF ¶ 10). Appellant concludes that there was a mutual mistake in bid. Appellant's argument is illogical and does not advance its case. We find no evidence of a mistake in bid, unilateral or bilateral.[3]

Finally, appellant makes the contention for the first time in its opposition brief that it made a unilateral mistake in bid when it relied upon the procurement history for the spur gears which was contained in the solicitation. This argument is difficult to comprehend. The procurement history cited by appellant merely sets forth unit costs for earlier contracts dating back to 10 July 2007 and ranging between $106.00 and $210.95 (SOF ¶ 1). Appellant's bid of $112.25 per unit fit well within this range. It also closely tracked the government's estimate of $127.86 (SOF ¶ 2).

In order to establish a defense against a default termination based upon a unilateral mistake in bid, appellant must demonstrate by clear and convincing evidence that:

> (1) [A] mistake in fact occurred prior to contract award;
> (2) the mistake was a clear-cut, clerical or mathematical
> error or a misreading of the specifications and not a
> judgmental error; (3) prior to award the Government knew,
> or should have known, that a mistake had been made and,
> therefore, should have requested bid verification; (4) the
> Government did not request bid verification or its request
> for bid verification was inadequate; and (5) proof of the
> intended bid is established.

*McClure Electrical Constructors, Inc. v. Dalton*, 132 F.3d 709, 711 (Fed. Cir. 1997) (citing *Solar Foam Insulation*, ASBCA No. 46921, 94-2 BCA ¶ 26,901. Even though appellant's contention that it somehow relied on the procurement history in formulating a mistaken bid is not supported by record evidence, we shall assume, for purposes of the motion that, "a mistake in fact occurred prior to contract award."

---

[3] Appellant did not include this argument in its opposition brief and may have abandoned it (app. br., *passim*).

Nevertheless, appellant has not satisfied, by clear and convincing evidence, the other four prongs of the test. For example, IGT has not demonstrated or alleged either that it made a clear-cut, clerical or mathematical error or misread the specifications. In fact, its bid was in line both with the procurement history and the government's estimate. In addition, the CO could not have been placed on notice by appellant's bid that there had been a mistake: there was simply no disparity between it, the procurement history, and the government's estimate. Under these circumstances, IGT's contentions must fail.

## CONCLUSION

We find no genuine disputes as to material facts and that the government is entitled to judgment as a matter of law. The government's motion for summary judgment is granted. The appeal is denied.

Dated: 7 October 2014

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58458, Appeal of Gerald R. Rouillard, III, d/b/a International Gear Technologies, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
